# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **MARVIN MENDOZA**, Individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No. 3:19-cv-00195 |
| v. | Magistrate Judge Frensley |
| **SANTA ROSA CONSULTING, INC.**, | FLSA Opt-in Collective Action<br>Rule 23 Class Action |
| Defendant. | |

| | |
|---|---|
| **CONSTANTINO PAPADIMITROPOULOS** and **JOYCE VALLONE**, Individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No.: 3:21-cv-00497 |
| v. | |
| **SANTA ROSA CONSULTING, INC.**, | JURY DEMANDED |
| Defendant. | |

## JOINT MOTION TO APPROVE SETTLEMENT AGREEMENT AND INCORPORATED MEMORANDUM

Following litigation and extensive, ongoing, negotiations, Named Plaintiffs Marvin Mendoza, Constantino Papadimitropoulos and Joyce Vallone individually ("Named Plaintiffs") and on behalf of the Opt-in Plaintiffs who have joined these lawsuits ("Plaintiffs and Opt-in Plaintiffs" or collectively "Plaintiffs"), and Defendant Santa Rosa Consulting, Inc. ("Defendant") (collectively, "the Parties") reached a settlement in the two above-captioned cases. The Parties now respectfully request that the Court approve their settlement of these Fair Labor Standards Act

1

("FLSA") collective actions seeking alleged overtime compensation and dismiss these cases with prejudice. As detailed below, the Court should grant the Parties' Motion because this settlement is a fair, adequate, and reasonable resolution of the Parties' bona fide dispute as to liability and alleged damages under the FLSA.

I. **Relevant Procedural and Factual History.**

Named Plaintiff Marvin Mendoza, filed his Complaint in *Marvin Mendoza v. Santa Rosa Consulting, Inc.* ("*Mendoza* action") on March 1, 2019 in the Middle District of Tennessee, Case No. 3:19-cv-00195. Plaintiff Mendoza alleged that he and the putative class were improperly classified as independent contractors and did not receive overtime pay for hours worked in excess of forty (40) in each workweek, including pay for out-of-town travel time during normal business hours in violation of 29 C.F.R. § 785.39. Compl. (*Mendoza* Dkt. 1). Defendant has denied the allegations asserted in the *Mendoza* action. Answer (*Mendoza* Dkt. 20).

Named Plaintiffs Marvin Mendoza,[1] Constantino Papadimitropoulos and Joyce Vallone, individually and on behalf of others similarly situated, filed their Complaint in *Constantino Papadimitropoulos et al., v. Santa Rosa Consulting, Inc.* ("*Papadimitropoulos* action") on June 14, 2019 in the Eastern District of Michigan (Southern Division), Case No. 2:19-cv-11779-AJT-SDD. Plaintiffs alleged that they and the putative class of W-2 employees were not paid any compensation for required overnight, out-of-town travel that occurred during normal business hours in violation of 29 C.F.R. § 785.39. Compl. (*Papadimitropoulos* Dkt. 1). Defendant has denied the allegations asserted in the *Papadimitropoulos* action. *See* Def.'s Mot. to Dismiss (*Papadimitropoulos* Dkt. 25). The *Papadimitropoulos* action was transferred to this Court for

---

[1] Named Plaintiff Marvin Mendoza was dismissed from the *Papadimitropoulos* action on January 23, 2020, because his claims in that action were time-barred by the applicable statute of limitations 29 U.S.C. § 255(a).

2

settlement purposes on June 30, 2021, and reassigned Case Number 31-cv-00497. (*Papadimitropoulos* Dkt. 62).

During the course of this litigation, the Parties engaged in formal and informal discovery involving the production of extensive pay data, time data, and other documents. The Parties also engaged in their own extensive fact investigations. Finally, the Parties participated in a full-day mediation session with Bob Boston, Esq. on February 4, 2021, followed by additional mediation sessions involving Mr. Boston, which ultimately resulted in the resolution of both matters.

Defendant denies the claims asserted in these matters, contends that Named Plaintiffs and those similarly situated were properly paid for all time worked, and makes no admission whatsoever of liability or violation of the FLSA or any other statute. Defendant nevertheless desires to settle these matters on the terms set forth in the Settlement Agreement for the purpose of avoiding the burden, expense, and uncertainty of continuing litigation.

The Parties believe that the settlement reached in this matter is a fair and reasonable compromise given the disputed matters at issue and the risks of continuing forward with litigation on the merits.

## II. Terms of the Proposed Settlement.

### A. Settlement Amount and Allocation.

The Settlement Agreement provides that Defendant will pay the total gross sum of $200,000.00 (Two Hundred Thousand Dollars), which sum includes Plaintiffs' attorneys' fees and costs and service awards to the Named Plaintiffs. The details of the agreement are set forth in the Settlement Agreement, attached as *Exhibit A*. From the gross settlement amount, $33,275.00 (Thirty-Three Thousand Two Hundred Seventy-Five Dollars) is being allocated for the *Mendoza* action. This figure represented 91% of the total back pay claimed to be owed by the *Mendoza*

3

Plaintiffs plus an additional $4,000.00 (Four Thousand Dollars) for Mr. Mendoza as a service award for his work in this litigation. From the gross settlement amount, $21,050.00 (Twenty-One Thousand Fifty Dollars) is being allocated for the *Papadimitropoulos* action. This figure represents the claimed back pay calculated at $516.67 (Five Hundred Sixteen Dollars Sixty-Seven Cents) per project worked per plaintiff plus an additional $2,000.00 (Two Thousand Dollars) service award each for Mr. Papadimitropoulos and Ms. Vallone.

Plaintiffs' Counsel hereby move that their fees and costs of $141,675.00 (One Hundred Forty-One Thousand Six Hundred Seventy-Five Dollars) be approved by the Court. This relief was negotiated with the assistance of Mr. Boston *after* relief to Plaintiffs was agreed upon by the parties, and it is a separate obligation to be borne by Defendant under the proposed Settlement. Santa Rosa's payment of fees, costs and expenses will not reduce any Plaintiff's settlement award amount. Plaintiffs' Counsel spent significant time and resources litigating this matter through pleadings, document analysis, client communication, and settlement negotiations. Plaintiffs' Counsel will spend more hours finalizing this settlement and distributing the settlement proceeds that will not be factored into this total. The amount requested by Plaintiffs' Counsel includes all litigation costs and expenses. Plaintiffs' Counsel submits that the fee request represents a small fraction of the time Plaintiffs' Counsel incurred litigating this matter. Finally, Defendant has agreed to pay this amount as fees and costs and does not oppose Plaintiffs' Counsel's request.

**B.  Release of Claims.**

In exchange for the payments to be made under the Settlement Agreement, Plaintiffs have agreed to dismiss both actions with prejudice. Further, the Named Plaintiffs, on behalf of their heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, personal representatives, successors-in-interest, and assigns, have agreed to release and discharge

Defendant (and related individuals and entities as described in the Settlement Agreement) from any and all known and unknown claims for overtime compensation, minimum wages, liquidated damages, penalties and interest under the FLSA or applicable state laws (including statutory and common law claims for breach of contract, unjust enrichment or other common law claims relating to wage and hour issues) alleged in or arising out of the acts alleged in these Actions.

Similarly, each Opt-in Plaintiff, on behalf of their respective heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, personal representatives, successors-in-interest, and assigns, will release and discharge Defendant (and related individuals and entities) from all known and unknown claims for overtime compensation, minimum wages, liquidated damages, penalties and interest under the FLSA or applicable state laws (including statutory and common law claims for breach of contract, unjust enrichment or other common law claims relating to wage and hour issues) alleged in or arising out of the acts alleged in these Actions.

## **MEMORANDUM OF LAW**

The Parties have reached a settlement which fairly and reasonably resolves the Parties' claims and defenses. The agreement was negotiated at arm's length between counsel through mediation involving all parties. As such, the Court should enter an order approving the settlement.

**I.  The Proposed Settlement Fairly and Reasonably Resolves the Parties Claims and Defenses.**

   **A.  Standard for Approval of Settlement of FLSA Collective Actions**

Although it is not clear in this Circuit that court approval of a settlement of FLSA claims is required to be binding, parties are certainly free to seek court approval of a private lawsuit brought under Section 216(b). *See Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1353

5

Case 3:19-cv-00195   Document 78   Filed 07/20/21   Page 5 of 20 PageID #: 545

(11th Cir. 1982).[2] In reviewing a settlement of a private FLSA claim, the court must scrutinize the proposed settlement for fairness and determine whether the settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id.* at 1355; *accord Simmons v. Mathis Tire & Auto Serv., Inc.*, No. 13- 2875, 2015 WL 5008220, at *1 (W.D. Tenn. Aug. 20, 2015); *Wills v. Cellular Sales of Tenn., LLC*, No. 12-391, 2014 WL 8251539, at *1 (E.D. Tenn. Aug. 18, 2014); *Bartlow v. Grand Crowne Resorts of Pigeon Forge*, No. 11-400, 2012 WL 6707008, at *1 (E.D. Tenn. Dec. 26, 2012). When it appears that a settlement "reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages[] that are actually in dispute," the Court should "approve the settlement in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores*, 679 F.2d at 1354. Additionally, a court presiding over an FLSA suit "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).

### B. A Bona Fide Dispute Exists Over Liability and Damages.

In reviewing the settlement of a plaintiff's FLSA claims, the district court must "'ensure that the parties are not, via settlement of [the] claims, negotiating around the clear FLSA requirements of compensation for all hours worked, minimum wages, maximum hours, and overtime.'" *Rotuna v. W. Customer Mgmt. Grp. LLC*, No. 09-1608, 2010 WL 2490989 (N.D. Ohio June 15, 2010). The existence of a bona fide dispute serves as a guarantee that the parties have not manipulated the settlement process to permit the employer to avoid its obligations under the FLSA. *Id; accord Ochs v. Modern Design, Inc.*, No. 14-635, 2014 WL 4983674, at *2 (N.D. Ohio Oct. 6,

---

[2] *But see Martin v. Spring Break '83 Prods., L.L.C.*, 688 F.3d 247, 257 (5th Cir. 2012) (holding where plaintiffs were represented by counsel and knew about their FLSA rights Court approval of an FLSA settlement was not required because there was little danger of the plaintiffs being disadvantaged by unequal bargaining power.)

6

2014). "A bona fide dispute has to do with whether some issue of the employer's liability is 'actually and reasonably in dispute.'" *Athan v. United States Steel Corp.*, --- F.3d ---, 2021 WL 805430, at *3 (E.D. Mich. Mar. 3, 2021) (citations omitted).

A bona fide dispute clearly exists here. In *Mendoza*, Plaintiffs allege that Defendant misclassified its "at-the-elbow" consultants as independent contractors and only paid them on a straight-rate basis such that they are owed unpaid overtime premium for all hours worked above forty (40) hours in a given workweek. The *Mendoza* Plaintiffs further allege that Defendant failed to pay the *Mendoza* Plaintiffs any compensation for required overnight, out-of-town travel that occurred during normal business hours in violation of 29 C.F.R. § 785.39. Similarly, in *Papadimitropoulos*, Plaintiffs—who were all classified as hourly-paid W-2 employees—allege Defendant failed to pay them any compensation for required overnight, out-of-town travel that occurred during normal business hours in violation of 29 C.F.R. § 785.39.

Defendant specifically denies these claims and further denies that Plaintiffs are owed any additional wages under the FLSA or any other laws. Defendant contends that Plaintiffs were all properly classified under the FLSA and it is not required to compensate any Plaintiff for his or her required overnight, out-of-town travel under 29 C.F.R. § 785.39.

In addition to the many disputes regarding Defendant's liability and potential collective action certification and decertification, the Parties have opposing views on other damages components such as: (1) how to calculate damages, (2) whether liquidated damages were available; and (3) whether a two-year or three-year limitations period apply. Defendant maintains that it properly compensated all of its workers pursuant to its policies and procedures and all applicable law.

7

Although the Parties continue to firmly believe in the merits of their respective claims and defenses, given the time and expense associated with full-blown litigation and discovery, and the uncertainty of dispositive motion practice, class certification and decertification, and trial, the Parties agree that a compromise is appropriate at this stage of the litigation. They desire to resolve this case by way of a negotiated settlement payment by Defendant in exchange for releases of claims by Plaintiffs and dismissal of these cases with prejudice in order to avoid the time and expense inherent in continued litigation. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1354 ("Thus, when the parties [to the litigation] submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching.").

### C. The Settlement Is Fair and Reasonable.

In addition to resolving a bona fide dispute between the Parties, the settlement achieved is fair and reasonable and should be approved for several reasons. First, the proposed settlement arises out of actions for alleged unpaid overtime and other wages brought by Plaintiffs against their employer. The settlement will provide the *Mendoza* Plaintiffs with 91% of the back pay they contend is owed based on Defendant's time records. The settlement of the *Papadimitropoulos* travel time claims is based upon a reasonable amount of the alleged unpaid overtime per project during a 2-year lookback period based on the date each opt-in plaintiff's consent form was filed.

Plaintiffs believe such a compromise is reasonable under the circumstances given the defenses and risks associated with continuing to litigate Plaintiffs' claims in these cases. For example, the dismissal on summary judgment of nearly identical out-of-town travel claims by "at-the-elbow" consultants is currently on appeal before the Eighth Circuit Court of Appeals. *See Borup v. The CJS Solutions Gr., d/b/a The HCI Gr.*, Nos. 18-1647, 19-1532, 2020 WL 2769143,

at *6 (D. Minn. May 28, 2020) (holding FLSA did not require employer to pay its at-the-elbow employees for time spent in out-of-town travel to and from "go live" projects), *appeal pending in Vallone v. The CJS Solutions Gr., d/b/a The HCI Gr.*, No. 20-2874 (8th Cir.).

Thus, Plaintiffs and Plaintiffs' Counsel believe the proposed Settlement provides a fair recovery considering that Defendant has: (1) reasonable arguments for why the Plaintiffs should get no recovery at all; (2) a chance of having either or both of the collectives decertified if conditional class certification was granted in either case—potentially with the claims of all but the Named Plaintiffs being dismissed; (3) legitimate arguments that liquidated damages were not available; and (4) legitimate arguments that a two-year statutory period should apply.

Second, no collusion occurred between the Parties or their counsel. *See Schneider v. Goodyear Tire & Rubber Co.,* No. 13-2741, 2014 WL 2579637, at *2 (N.D. Ohio June 9, 2015) (considering the risk of fraud or collusion between the parties in determining whether to approve an FLSA settlement and concluding that because the parties had engaged in court-supervised negotiations, there was no such risk). Rather, this settlement was reached as a result of arm's-length negotiations between the Parties through experienced attorneys and a full-day mediation and continuing negotiations thereafter involving a neutral third-party mediator, Bob Boston, Esq. *See, e.g., Athan*, 2021 WL 805430, at *4 (finding no evidence of fraud or collusion in parties' FLSA settlement where parties reached an arms' length settlement over the course of a 12-hour mediation with an independent third-party mediator); *Fitzgerald v. P.L. Marketing, Inc.*, No. 17-02251, 2020 WL 3621250, at *6 (W.D. Tenn. July 2, 2020) (recognizing there were "no concerns about fraud or collusion" where FLSA settlement was product of two mediation sessions with a respected third-party mediator).

9

Third, during the litigation and settlement of this action, Plaintiffs were represented by counsel who are experienced in handling wage and hour collective actions. Plaintiffs' Counsel have the experience to assess the risks of continued litigation and benefits of settlement and have done so in this action. Plaintiffs' Counsel also have a long-standing multijurisdictional practice representing both employees and employers in similar FLSA collective litigation. Defense counsel is likewise experienced in defending similar claims. Counsel for the Parties have advised their respective clients regarding the settlement and they have recommended judicial approval. Courts routinely give these recommendations weight. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1354 (recognizing that courts rely on the adversary nature of a litigated FLSA case resulting in settlement as an indication of fairness); *Athan*, 2021 WL 805430, at *6 (recognizing opinions of class counsel and representatives favored approval of FLSA settlement).

Fourth, the range of possible recovery in this case was uncertain and the Parties had very divergent positions on liability overall and damages. As noted above, Plaintiffs were at risk of, *inter alia*, recovering little or nothing due to difficult factual and legal questions about whether Defendant's classification of the *Mendoza* Plaintiffs was correct, the likelihood of certification and/or decertification, and the Eighth Circuit's pending decision of the appeal in *Vallone, supra,* possibly emasculating the merits of Plaintiffs' travel time claims. "Given the uncertainty surrounding a possible trial in [these matters], the certainty and finality that comes with settlement [] weighs in favor of a ruling approving the agreement. Likewise, such a ruling promotes the public's interest in encouraging settlement of litigation." *Dillworth v. Case Farms Processing, Inc.*, No. 08-1694, 2010 WL 7769033, at *6 (N.D. Ohio Mar. 8, 2010); *see also Fitzgerald*, 2020 WL 3621250, at *6 ("Public policy favors settlement of collective actions.").

The proposed settlement provides 91% of the total back pay the *Mendoza* Plaintiffs contend is due on account of their alleged misclassification as independent contractors based on Defendants' timekeeping records. This figure well exceeds the average results in FLSA matters. *See, e.g., Athan*, 2021 WL 805430, at *4 (discussing average recovery in wage-and-hour collective and class actions is 7-11% and approving FLSA settlement based on "counsel for both parties represent[ing] … that the recovery to Plaintiffs exceeds that average by a considerable amount"); *Dillworth*, 2010 WL 7769033, at *8 (discussing average class results while approving an FLSA settlement of one-third of claimed damages).

With respect to the *Papadimitropoulos* Plaintiffs' travel time-only claim, the amount they would be awarded *if* successful on this claim is uncertain—particularly since Plaintiffs' travel time was neither recorded nor paid by Defendant. There are likely to be substantial gaps, discrepancies, and omissions in the documentation available to calculate Plaintiffs' purported damages, and significant legal disputes concerning how to compute Plaintiffs' compensable travel time. *See Fitzgerald*, 2020 WL 3621250, at *9 (concluding relief provided for classes in FLSA collective and Rule 23 class action was adequate given difficult legal questions about liability and damages, factual questions about data extrapolation would have been presented at trial, and plaintiffs' success was not assured). The monetary award for each individual Plaintiff was therefore derived by calculating an agreed-upon dollar figure per out-of-town project necessitating an overnight stay ($516.67) during a two-year lookback period. This result is fair and reasonable under the circumstances. *See Athan*, 2021 WL 805430, at *4 (approving FLSA settlement involving monetary awards for each individual plaintiff based on calculation of agreed-upon percentage of potential damages).

Fifth, the proceedings have advanced through initial pleadings, fact investigation and an informal and formal discovery period, permitting the Parties and their experienced counsel to: (i) collect, obtain, and review evidence; (ii) review and assess data and other information; (iii) assess evidence provided in support of the claims and defenses in this matter; (iv) evaluate their claims and defenses; (v) understand the scope of potential damages; and (vi) engage in negotiations with the mutual understanding that dispositive motion practice and the certification/decertification motion process would be a difficult, costly, and an uncertain undertaking.

Sixth, the complexity, expense, and likely duration of the litigation should a settlement not have been reached weighs heavily in favor of finding that this settlement is fair and reasonable. Without question, if the case had not settled, the Parties would have spent significant time and resources briefing class certification and decertification and other dispositive motions. After the resolution of these motions, the Parties would have had to engage in expensive and extensive efforts to prepare pretrial submissions and prepare for trial in this matter while those motions were pending, and eventually, may have faced the prospect of an expensive, lengthy trial as well as likely post-trial motions and appeals.

Rather than take this path, the Parties directed their efforts toward an informed, efficient resolution of Plaintiffs' claims. While a number of issues remain unresolved, the expansive informal discovery and fact investigation processes enabled counsel to critically assess the respective strengths and weaknesses of their case and reach the conclusion that settlement is in the Parties' best interests. The settlement eliminates the inherent risks both sides would face if this case were to continue. *See, e.g., Athan*, 2021 WL 805430, at *5 ("The Parties have compromised to avoid experiencing either extreme outcome—dismissal for Plaintiffs or an adverse judgment for Defendant. The Parties' settlement is a reasonable means for the Parties to minimize or altogether

avoid future time expended, risks, and litigation costs."). Under these circumstances, the settlement is fair, reasonable, and adequate for Plaintiffs, and the Court should approve it.

**II.     Plaintiffs' Counsel's Requested Award of Attorneys' Fees and Costs Is Reasonable and Should Be Fully Granted.**

Courts encourage litigants to resolve attorney fee issues by agreement. "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *accord Melgar v. OK Foods*, 902 F.3d 775, 778 (8th Cir. 2018) (recognizing tradition of encouraging settlement of attorneys' fees between private litigants).

Here, the proposed award of attorneys' fees and costs is fair, reasonable, and should be approved. The amount does not fully compensate Plaintiffs' Counsel for the time and effort spent in litigating this matter, as Plaintiffs' Counsel sought to reserve as much of the settlement payment as possible for distribution to Plaintiffs. Defendant does not oppose the payment of the agreed-upon amount of attorneys' fees, litigation expenses, and costs of $141,675.00 (One Hundred Forty-One Thousand Six Hundred Seventy-Five Dollars), which amount will not reduce any Plaintiff's recovery under the proposed settlement. An award of fees and costs is appropriate as "the attorneys' fees provision[] of the . . . FLSA exist[s] to enable Plaintiffs to employ reasonably competent lawyers without costs to themselves if they prevail and, thereby, to help ensure enforcement of the substantive provisions of the FLSA." *United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n., Local 307 v. G & M Roofing & Sheet Metal Co., Inc.*, 732 F.2d 495, 502 (6th Cir. 1984).

In the Sixth Circuit, the only requirement for awards of attorneys' fees and costs to class plaintiffs' counsel is that the award "be reasonable under the circumstances." *Rawlings v. Prudential-Bache Property*, 9 F.3d 513, 516 (6th Cir. 1993); *see also Blum v. Stenson*, 465 U.S.

13

886, 893 (1984). As the Supreme Court has recognized, without the class/collective action mechanisms, individuals with small claims lack the economic resources to vindicate their rights. Without compensation to attorneys who are willing to undertake the inherent complexities and uncertainties of class and collective action litigation, enforcement of federal and state wage and hour laws would be jeopardized. *See Eisen v. Carlisle and Jacqueline*, 417 U.S. 156, 161 (1974). Thus, attorneys taking on class and collective actions enable litigants to pool their claims, provide an invaluable service to the judicial process and society as a whole.

As stated above, the complexity of this case and the novelty of the issues presented required a high level of skill and knowledge of wage and hour collective actions. It is respectfully submitted that Plaintiffs' Counsel have unique skills and qualifications in the area of wage and hour litigation and maintain nationwide class and collective action wage and hour practices. As a result, Plaintiffs' Counsel understands first-hand the risks, difficulties, and costs associated with actually preparing and taking a collective action to trial, as opposed to negotiating a favorable settlement.

Plaintiffs' attorneys' fees and costs are reasonable given the result obtained,[3] time expended, and time yet to be expended in administering the proposed settlement. *See Mclain et.*

---

[3] "Courts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees" in an FLSA case "encourages the vindication of congressionally identified policies and rights." *Fegley v. Higgins,* 19 F.3d 1126, 1134-35 (6th Cir. 1994); *United Slate*, 732 F.2d at 503 ("[T]ransfixion on the damages amount in establishing fees would penalize those litigants whose cases carry slight pecuniary damages, but which present instances of significant statutory violations"); *see also Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1647 (2018) (Ginsburg, J., dissenting) ("Expenses entailed in mounting individual [FLSA] claims will often far outweigh potential recoveries…."); *Orth v. Wisconsin State Employees Union, Council 24,* 546 F.3d 868, 875 (7th Cir. 2008) (recognizing that attorneys fee awards in FLSA collective actions are often larger than the damages awarded); *Rabetski v. Century Oaks of Appleton, Inc.*, No. 17-1453, 2018 WL 2694528, at *3 (E.D. Wis. June 5, 2018) (awarding attorneys' fees exceeding plaintiff's wage-and-hour recovery by factor of more than 10, and recognizing that "the Seventh Circuit has approved an award for 'a fee 21 times as great as the damages that the plaintiff obtained.'"); *Allende v. Unitech Design, Inc.*, 783 F. Supp. 2d 509, 511 (S.D.N.Y. 2011) ("In FLSA cases, like other discrimination or civil rights cases, the attorneys' fees need not be proportional to the damages

*al. v. First Acceptance Corp.*, No. 3-17-cv-00408 [ECF No. 57] (M.D. Tenn. 2018) (Crenshaw J./Holmes M.J.) (approving attorneys' fees and costs approximating 66% of the total settlement amount); *Wilson et. al. v. MMR Senior Alliance Corp et. al.*, No. 3:17-cv-1412 [ECF No. 56] (M.D. Tenn. 2018) (Crenshaw J./Holmes M.J.) (approving attorneys' fees and costs approximating 50% of the total settlement amount); *Macklin v. Delta Metals Co., Inc.*, No. 2:08-CV-02667, 2011 WL 13070420 (W.D. Tenn. July 6, 2011) (McCalla, J.) (awarding $48,802.02 in attorneys' fees and costs and $300.15 in damages). "When the maximum recovery for an employee is relatively small because the unpaid overtime is relatively minor, [as is the case here], an attorney may reasonably recover more than the employee." *Thompson v. United Stone, LLC*, No. 14-224, 2015 WL 867988, at *2 (E.D. Tenn. Mar. 2, 2015) (collecting cases). "Indeed, the Sixth Circuit has 'upheld substantial awards of attorney's fees even though a plaintiff recovered only nominal damages.'" *West v. Emeritus Corp.*, 15-437, 2017 WL 2880394, at *1-2 (M.D. Tenn. July 5, 2017) (Collier, J.) (recognizing "the relative lack of correlation between plaintiffs' recoveries and attorney's fees in FLSA cases;" awarding $46,006.31 in attorneys' fees and costs and $8,993.69 in damages).

Counsel for Plaintiffs note that no expenses will be deducted from the amounts recovered by Plaintiffs. Any expenses incurred will be deemed covered by the attorney's fees and additional costs paid to Plaintiffs' counsel. Specifically, Plaintiffs' counsel has spent over 1,000 hours litigating these two matters including, for example: thorough intake interviews with all Plaintiffs and Opt-in Plaintiffs, propounding written discovery and document production requests to Defendant, answering written discovery and document requests from Defendant, in-depth analysis related to document produced by Defendant, drafting declarations from Plaintiffs, drafting and

---

plaintiffs recover, because the award of attorneys' fees in such cases encourages the vindication of Congressionally identified policies and rights.").

15

Case 3:19-cv-00195   Document 78   Filed 07/20/21   Page 15 of 20 PageID #: 555

filing the *Papadimitropoulos* Motion for Conditional Certification and *Mendoza* Motion to Transfer, and negotiating this settlement. Plaintiffs' counsel will spend more hours finalizing this settlement and distributing the settlement proceeds. At a hypothetical blended hourly rate of $350.00 (Three Hundred Fifty Dollars) per hour, Plaintiffs' Counsel would be entitled to $350,000.00 (Three Hundred Fifty Thousand Dollars). The requested attorneys' fees is therefore a fraction of a $350 blended rate and well below the range of previously approved hourly-rates in similar class and collective action settlements. *See Fitzgerald*, 2020 WL 3621250, at *10 (approving hourly-rates for plaintiffs' counsel ranging from $325 to $600 in FLSA collective action); Order Approving Settlement, *Flatt v. LHC Gr., Inc.*, No. 16-00014 (M.D. Tenn. Mar. 1, 2017) (Sharp, J.) (approving reasonable hourly rates charged by plaintiffs' counsel, ranging from $285 to $600).

The amount requested by Plaintiffs' Counsel includes all costs and is less than would be billed for comparable work to an hourly-paying client. Finally, after contested negotiation, Defendant has agreed to independently pay this amount as fees and costs and do not oppose Plaintiffs' Counsel's request. In a contested fee dispute, Plaintiffs' counsel would seek rates in excess of this hypothetical blended rate,[4] but agreed to accept a lower amount solely to resolve these small matters without further contested litigation over fees.

---

[4] Plaintiffs' Counsels' hourly rates have been approved in excess of this hypothetical blended rate in other complex class action and FLSA collective action litigation. For example, within the Sixth Circuit, Plaintiffs' Counsel, T. Joseph Snodgrass, has been approved at a rate of $795 per hour in *In re: Automotive Parts Antitrust Litigation*, MDL No. 12-MD-02311 (E.D. Mich.); *see also, e.g.,* Order for Final Approval of Class Settlement at ¶ 3, *Ingersoll v. Farmland Foods, Inc.,* No. 10-6046 (W.D. Mo. Dec. 30, 2013) (approving Larson · King's compromised 2013 hourly rates of up to $450 per hour in donning and doffing class action); Order of Final Approval and Final Judgment at ¶ 3, *Helmert v. Butterball, LLC,* No. 08-0342 (E.D. Ark. Nov. 9, 2012) (approving Larson · King's 2012 hourly rates ranging from $250 to $500 in donning and doffing collective and class action).

These considerations support the reasonableness of Plaintiffs' Counsels' requested fee award. *See Athan*, 2021 WL 805430, at *9 ("The fees are all the more reasonable given that they are the result of vigorous negotiations between the Parties and are less than the total lodestar actually incurred on this matter by Plaintiffs' Counsel."). Plaintiffs therefore respectfully request that their Plaintiffs' Counsel be awarded attorneys' fees, litigation expenses, and costs in the amount of $141,674.89.

Finally, the requested service awards are appropriate here in light of the efforts made by Named Plaintiffs Mendoza, Papadimitropoulos and Vallone to protect the interests of the Opt-in Plaintiffs, the time and effort they expended pursuing these matters, as well as the substantial benefit they bestowed on the Opt-in Plaintiffs. *See, e.g., Fitzgerald v. P.L. Marketing, Inc.*, No. 17-02251, 2020 WL 3621250, at *11 (W.D. Tenn. July 2, 2020) (awarding $7,500 service payment to FLSA named plaintiff and $2,000 each to two Rule 23 class representatives for "substantially assist[ing] in the litigation by participating in client interviews and conferences with Class Counsel and by providing relevant documents"). The Named Plaintiffs regularly communicated with Plaintiffs' Counsel, provided documents in response to discovery requests, assisted counsel with discovery responses, reviewed documents, provided declarations in support of certification, and generally acted in a fashion that was consistent with a representative of the highest ethical standards. Through their combined efforts, the Named Plaintiffs provided Plaintiffs' Counsel access to the underlying facts, which in turn led to a beneficial recovery for the Opt-in Plaintiffs. "The service payments Named Plaintiffs seek are similar to other collective and class action incentive awards approved by courts in this Circuit." *Id.* (collecting cases). Accordingly, "the requested service awards are appropriate and reasonable," and should be approved. *Id.*

## CONCLUSION

This FLSA collective action settlement is a product of an arm's-length negotiation between the Parties and their counsel with an independent mediator, resolving a bona fide dispute over allegedly owed overtime wages. The settlement is fair and reasonable and provides Plaintiffs with significant monetary relief and avoids further protracted litigation. Accordingly, the Parties jointly and respectfully request that this Court approve the Parties' Settlement Agreement (Exhibit A attached hereto) and the distribution of the settlement amount to Plaintiffs in full as described above. Plaintiffs' Counsel further request that this Court award reasonable attorneys' fees and litigation costs, as well as service awards for the Named Plaintiffs, in the amount requested. Finally, the Parties jointly request that this action be dismissed with prejudice.

Respectfully submitted,

**JACKSON, SHIELDS, YEISER, HOLT, OWEN & BRYANT**

*s/ J. Russ Bryant*
Gordon E. Jackson (TN BPR #08323)
J. Russ Bryant (TN BPR #33830)
Robert E. Turner, IV (TN BPR #35364)
Nathaniel A. Bishop (TN BPR #35944)
262 German Oak Drive
Memphis, Tennessee 38018
(901) 754-8001
(901) 754-8524 (Facsimile)
*gjackson@jsyc.com*
*rbryant@jsyc.com*
*rturner@jsyc.com*
*nbishop@jsyc.com*
    -and-

**LARSON • KING, LLP**
T. Joseph Snodgrass (MN #231071)
(admitted *pro hac vice*)
30 East Seventh St., Suite 2800
St. Paul, MN 55101
(651) 312-6500
(651) 312-6618 (Facsimile)
*jsnodgrass@larsonking.com*

*Attorneys for Plaintiffs*

    -and-
**WALLER LANSDEN DORTCH & DAVIS, LLP**

By: */s/ Andrew S. Naylor*
*with permission by J. Russ Bryant*
Andrew S. Naylor
511 Union Street, Suite 2700
Nashville, TN 37219
(615) 850-8578
*andy.naylor@wallerlaw.com*

    -and-

19

**MORAN • KARAMOUZIS LLP**
Andrew P. Karamouzis
(admitted *pro hac vice*)
265 Sunrise Highway, Suite 61
Rockville Centre, New York 11570
(516) 678-6660
(516) 678-6661 (Facsimile)
*akaramouzis@mka-law.com*

*Attorneys for Defendant*
*Santa Rosa Consulting, Inc.*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this the 20th day of July, 2021 a true and correct copy of the foregoing Joint Motion to Approve Settlement has been filed with the Clerk of the United States District Court for the Middle District of Tennessee using the CM/ECF system. The Court's CM/ECF system will send an email notification of the foregoing filing to all parties and counsel of record who are registered with the Court's CM/ECF system including: Andrew S. Naylor and Andrew Karamouzis.

*s/J. Russ Bryant*